Romula **FONTANILLA**, Plaintiff,

v.

**CITY AND COUNTY OF SAN FRANCISCO, et al.,**
Defendants.

**No. C–96–3916 MHP.**

United States District Court,
N.D. California.

Nov. 14, 1997.

---

Sheila A. Reid, Prentice & Scott, San Francisco, CA, for Plaintiff.

Vicki A. Clayton, Cheryl Adams, City Attorney's Office, Michael C. Scanlon, Jr., McGlynn, McLorg & Ritchie, San Francisco, CA, Stewart Weinberg, Van Bourg, Weinberg, Roger & Rosenfeld, Oakland, CA, for Defendants.

## MEMORANDUM AND ORDER

PATEL, Chief Judge.

On October 28, 1996, plaintiff Romulo Fontanilla brought this action, naming as defendants: the City and County of San Francisco; eight individual employees of the City and County of San Francisco; Dennis J. Shusterman, MD; Service Employees International Union Local 535; and two individual union representatives, Linda Joseph and Seth Shapiro.

In his first amended complaint, plaintiff alleged two causes of action against the City and County of San Francisco ("CCSF") and the eight individual employees of the City and County of San Francisco (collectively "CCSF defendants"): (1) violation of the Equal Protection and Due Process clauses of the Fourteenth Amendment; and (2) violation of his civil rights. Plaintiff further alleged a violation of his First Amendment right to free speech by defendants Smith, Kuwamoto, Vera and Wald. Plaintiff also alleged municipal liability against CCSF.[1]

---

1. In his first amended complaint, Fontanilla also alleges three other causes of action against the CCSF: (1) violation of the Americans With Disabilities Act, 42 U.S.C. Section 12101; (2) retaliation in violation of California Government Code

In addition, plaintiff alleged two causes of action against Dr. Dennis Shusterman: (1) violation of the Equal Protection and Due Process clauses of the Fourteenth Amendment; and (2) conspiracy to deprive plaintiff of his property interest in his employment and of his First Amendment right to free speech.

Finally, plaintiff alleged that defendants Service Employees International Union Local 535 ("SEIU Local 535") and individuals Linda Joseph and Seth Shapiro (collectively "union defendants"): (1) breached their duty of fair representation to plaintiff; and (2) conspired to violate plaintiff's civil rights.

Now before the court are three separate motions: (1) the CCSF defendants' motions for summary judgment and to dismiss; (2) Dr. Shusterman's motion for summary judgment; and (3) the union defendants' motion for summary judgment.[2]

*BACKGROUND*[3]

### 1. *The Civil Service Commission Rules*

City and County of San Francisco Civil Service Commission Rules ("CSC Rules") 15 and 22 permit an appointing officer to authorize a medical evaluation of any employee who he or she believes is not medically or physically competent to perform assigned duties and who, if allowed to continue in employment, may represent a risk to co-workers, the public, or himself. The rules further provide that if the employee is found not competent, the appointing officer "shall place the employee on compulsory sick leave." CSC Rule 15.02(B); CSC Rule 22.02D(1), (2) and (3).

The CSC Rules also provide that an employee shall remain on compulsory sick leave until a physician designated by the Human Resources Director finds the employee competent to return to duty. CSC Rule 22.02D(3). Generally, employees cannot remain on leave for more than one year. An official may extend the one year period if a physician advises that there is a reasonable probability that the employee can return to employment. If a physician finds that there is no reasonable probability that the employee will be able to return, the CCSF has "good cause" for discharge. CSC Rule 22.02C(3), a & b.

### 2. *CCSF and the Individual Defendants*[4]

In 1988, the CCSF transferred plaintiff Romulo Fontanilla to a position in the Department of Social Services ("Department") as a Senior Eligibility Worker, a civil service classification. On December 31, 1992, two of Fontanilla's co-workers submitted memos to defendant Dorothy Enisman complaining that Fontanilla made "gun-like" gestures at them, and that he accompanied those gestures with the sounds of a firing gun. One of the employees also reported that Fontanilla kept gun magazines around the work area.

Enisman, Fontanilla's division manager, reported this incident to personnel officers and defendants Mary Smith, John Vera and Gail Kuwamoto. Enisman told the personnel officers that Fontanilla's co-workers reported that he had previously made remarks and gestures which the co-workers perceived as threatening. Enisman also told them that Fontanilla's immediate supervisor, defendant Glenn Wilson, received similar complaints. According to Enisman, Wilson claimed that Fontanilla's co-workers were unwilling to put their complaints in writing because they were afraid of Fontanilla.

In response to Enisman's report, on January 7, 1993, defendant Smith requested that Fontanilla undergo a "fitness for duty" evaluation pursuant to CSC Rule 22. As a result, Fontanilla was scheduled for a series of "fitness for duty" evaluations through the City's

---

Section 12940; and (3) estoppel. Because the motions brought by the CCSF do not address these causes of action, neither does the court.

**2.** The court need not reach the plaintiff's cross motion for summary judgment because it ultimately grants the defendants' summary judgment motions.

**3.** Unless otherwise indicated, the following facts are extrapolated from the undisputed statement of facts (which the CCSF defendants submitted and the plaintiff failed to sign), and the parties' papers in support of and in opposition to defendants' motions for summary judgment.

**4.** The background facts discussed in this subsection discuss events involving other defendants only to the extent necessary to understand the general chain of events. The following subsections focus more on the facts pertaining to defendant Dr. Shusterman and the union defendants.

Center for Municipal Occupational Safety and Health ("CMOSH" or "Occupational Health Services"). Fontanilla underwent one medical examination at CMOSH on January 19, 1993. The examining physician and Interim Director of CMOSH, defendant Dr. Jeffrey Newman, referred Fontanilla for a complete psychiatric evaluation to one Dr. Swoiskin.

Before CMOSH completed the evaluations, on February 27, 1993, Fontanilla suffered a heart attack. As a result, Fontanilla was hospitalized and missed his consultation with Dr. Swoiskin which had been scheduled for March 1, 1993. Fontanilla requested a leave of absence, which was to last through May 1, 1993. The CCSF granted Fontanilla's request.

On April 28, 1993, before his leave expired, Fontanilla filed a worker's compensation claim alleging that his heart attack was work-related. Fontanilla then requested an additional leave of absence. On July 9, 1993, defendant Gail Kuwamoto advised Fontanilla that he was on compulsory sick leave retroactive to May 3, 1993. The compulsory sick leave was imposed pursuant to Civil Service Rule 22.02D(2) because Fontanilla failed to report for the scheduled fitness for duty appointments. On August 12, 1993, Fontanilla's workers' compensation claim was denied.

On August 26, 1993, the psychologist who examined Fontanilla in connection with his workers' compensation claim, Dr. Charles Brusman, submitted to the CCSF a release that permitted Fontanilla to return to work as of September 16, 1993 "provided that he is not returned to work as an eligibility worker." Fontanilla was not on any eligibility list for any other classification at that time.

On September 19, 1993, Fontanilla came to CMOSH for a "fitness for duty" examination. Dr. Newman again referred Fontanilla to Dr. Swoiskin for the evaluation that was originally scheduled for March 1, 1993. Dr. Swoiskin evaluated Fontanilla on September 20, 1993, and diagnosed him as having a paranoid personality disorder. Dr. Swoiskin concluded that the disorder would disrupt Fontanilla's work and that of his co-workers, and recommended that any return to work be contingent on Fontanilla's beginning treatment with a mental health professional. Based on the evaluation report of Dr. Swoiskin, on November 18, 1993, Dr. Newman issued a diagnosis stating that Fontanilla had a medical condition that interfered with his ability to perform the duties of his job. Dr. Newman then recommended a disability transfer.[5]

The CCSF extended Fontanilla's compulsory sick leave several times before terminating him in 1996. Kuwamoto and Smith advised Fontanilla many times that he had exceeded the limit for compulsory sick leave, but that they would extend his leave while he attempted to find another job. On September 28, 1994, the CCSF advised Fontanilla that he had exceeded the maximum period for compulsory sick leave status, and requested that he receive a re-evaluation to determine the likelihood of his returning to work in any capacity.

Physicians affiliated with CMOSH again examined Fontanilla. On May 15, 1995, defendant Dr. Dennis Shusterman advised the CCSF that Fontanilla had a medical condition which interfered with his ability to perform his essential job functions. Shusterman also advised the CCSF that there was no imminent likelihood of change in Fontanilla's functional status. With that, Shusterman recommended disability status.

In March 1996, defendant John Vera recommended that the CCSF proceed with Fontanilla's termination because Fontanilla could not perform his job. Defendant Michael Wald, the Department Director at the time, adopted that recommendation. On May 16, 1996, the CCSF sent Fontanilla notice of its intent to terminate him based upon his inability to perform the essential functions of his job. Mr. Fontanilla was then provided a hearing, at which counsel represented him. On July 18, 1996, the CCSF sent Fontanilla a notice of dismissal.

On August 1, 1996, Fontanilla's union filed a grievance challenging Fontanilla's termi-

---

5. As of November 1993, the CCSF had a Disability Transfer program run by defendant Silvia Castellanos. Fontanilla applied to the program, which was suspended as of April 1994 due to budget cuts. Fontanilla never received a transfer under this program.

nation. The CCSF processed the grievance in compliance with a four-step procedure set forth in the Memorandum of Understanding applicable to Fontanilla's employment. At step two, Vera resolved the grievance by permitting Fontanilla to undergo another evaluation by the CCSF physicians. Vera agreed that, if the physician found Fontanilla fit for duty, the CCSF would rescind Fontanilla's termination.

On December 17, 1996, Dr. Sarah Jewell found Fontanilla fit to return to duty as an Eligibility Worker. The CCSF rescinded Fontanilla's termination and reinstated him on June 30, 1997. The CCSF also offered Fontanilla all backpay and benefits, less appropriate payroll deductions, for the period from December 18, 1996 through June 27, 1997.

### 3. *Dr. Shusterman*

As of May 3, 1993, plaintiff had been placed on compulsory sick leave from his position as a Senior Eligibility Worker in the CCSF's Department of Social Services. On September 27, 1994, Shusterman conducted a fitness for duty medical exam on Fontanilla. Based on his exam and Fontanilla's medical records, Shusterman concluded, as had Dr. Swoiskin, that Fontanilla suffered from a paranoid personality disorder.

After Fontanilla told Shusterman that he wanted to return to work without restriction, Shusterman informed plaintiff that he would first have to undergo an updated psychiatric evaluation by Dr. Swoiskin. On April 28, 1995, plaintiff did undergo a further exam with Swoiskin, who again concluded that plaintiff suffered from a paranoid personality disorder.

On May 15, 1995, Shusterman issued a CSC Rule 22.02D medical report stating that Fontanilla had a medical condition which interfered with his ability to perform essential functions of his job, and recommended that Fontanilla be placed on disability status. Fontanilla then requested clarification on the meaning of "disability" status. Shusterman wrote Fontanilla and informed him of three options: 1) apply for disability transfer; 2) seek professional therapeutic services and ask to be reevaluated in six months or; 3) appeal Shusterman's report to the Civil Service Commission. Fontanilla did not attempt any of these options and Shusterman had no further contact with the plaintiff.

### 4. *The Union*

SEIU Local 535 is the sole union representative of Senior Eligibility Workers such as Fontanilla. During part of 1993, individual defendant Seth Shapiro acted as the field representative for the Senior Eligibility Workers. Individual defendant Linda Joseph took over as field representative on November 1, 1993.

In August 1993, in conjunction with Fontanilla's placement on compulsory sick leave, Shapiro filed a grievance on Fontanilla's behalf with the CCSF, claiming a violation by the CCSF of the collective bargaining agreement ("CBA"). In November, both Joseph and Shapiro met with a CCSF representative regarding the grievance. No resolution was reached.

Joseph and Shapiro next met with an attorney for the union. Although the attorney recommended arbitration as an option, he also noted that the union would likely lose, particularly given the medical evidence supporting plaintiff's inability to work. Although Joseph advised Fontanilla to get another medical opinion to counteract Dr. Brusman's statement that Fontanilla could not return to work as an eligibility worker, Fontanilla refused to do so.

In the meantime, the CCSF and the union were engaged in protracted CBA disputes which eventually ended up in state court. One of the disputed issues was whether CSC Rule 22, governing compulsory sick leave, was part of the CBA which the union had the right to enforce with the grievance procedure or whether it was merely a civil service rule. This, along with Fontanilla's failure to get a new doctor's report, was behind the union's decision not to compel arbitration of Fontanilla's grievance.

Fontanilla remained on compulsory sick leave during 1994 and 1995. In 1996, the CCSF terminated Fontanilla. After his termination, the union filed another grievance on Fontanilla's behalf. Joseph negotiated an agreement with the CCSF whereby Fontanilla would be sent to another doctor. Fontan-

illa subsequently saw another doctor who concluded that Fontanilla was fit to return to duty. The union and the CCSF negotiated an additional agreement whereby the CCSF agreed to full back pay and benefits from the date of the physician's release to the date he was actually returned to work.

## LEGAL STANDARDS

### 1. Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment shall be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ... since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *see also T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987) (the nonmoving party may not rely on the pleadings but must present significant probative evidence supporting the claim); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

The court's function, however, is not to make credibility determinations, *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510–11, and the inferences to be drawn from the facts must be viewed in a light most favorable to the party opposing the motion. *T.W. Elec. Serv.*, 809 F.2d at 631.

### 2. Motion to Dismiss

A motion to dismiss for failure to state a claim will be denied unless it appears that the plaintiff can prove no set of facts which would entitle him or her to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Fidelity Financial Corp. v. Federal Home Loan Bank of San Francisco*, 792 F.2d 1432, 1435 (9th Cir. 1986), *cert. denied*, 479 U.S. 1064, 107 S.Ct. 949, 93 L.Ed.2d 998 (1987). All material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. *NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986). Although the court is generally confined to consideration of the allegations in the pleadings, when the complaint is accompanied by attached documents, such documents are deemed part of the complaint and may be considered in evaluating the merits of a Rule 12(b)(6) motion. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987), *cert. denied sub. nom. Wyoming Community Dev. Auth. v. Durning*, 484 U.S. 944, 108 S.Ct. 330, 98 L.Ed.2d 358 (1987).

On any other motion to dismiss under Rule 12(b), the court may consider matters outside the pleadings, but must accept as true all material allegations of the complaint and construe the complaint in favor of the plaintiff. *See* Fed.R.Civ.P. 12; *Warth v. Seldin*, 422 U.S. 490, 501–02, 95 S.Ct. 2197, 2206–07, 45 L.Ed.2d 343 (1975) (considering the issue of standing). Each ground for dismissal will be considered in turn.

## DISCUSSION

### A. Plaintiff's Claims Against the CCSF Defendants

#### 1. Qualified Immunity: Due Process Claim

The CCSF individual defendants argue that they, as public officials and/or employees exercising discretion vested in them under the San Francisco Charter and the CSC Rules, are entitled to summary judgment on grounds of qualified immunity. Fontanilla disagrees, arguing that qualified immunity does not protect these government officials from civil liability in the performance of their discretionary functions because their conduct violates clearly established law of which a reasonable person would have known.[6]

---

6. The defendants argue that they are entitled to qualified immunity on all of plaintiff's claims. Plaintiff, however, primarily argues that defendants are not entitled to qualified immunity on the due process claim. Both because Fontanilla fails to argue at any length against qualified immunity on other claims and because the court disposes of those other claims on independent grounds, the court addresses qualified immunity only to the extent that it pertains to the due process claim against the CCSF individual defendants.

Section 1983 imposes liability upon any person who, acting under the color of state law, deprives another of a federally protected right. 42 U.S.C. § 1983. The qualified immunity doctrine, however, protects government officials from civil liability for performance of their discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Wheaton v. Webb–Petett*, 931 F.2d 613, 618 (9th Cir.1991). The relevant inquiry for qualified immunity purposes "is whether a reasonable government official could have believed that his conduct was lawful, in light of clearly established law and the information he possessed." *Thorsted v. Kelly*, 858 F.2d 571, 573 (9th Cir.1988). The *Harlow* "objective legal reasonableness" requirement permits "the defeat of insubstantial claims without resort to trial." *Behrens v. Pelletier*, 516 U.S. 299, 304–06, 116 S.Ct. 834, 838, 133 L.Ed.2d 773 (1996).

A two-part analysis determines whether an official is entitled to qualified immunity: (1) the Court must determine whether plaintiff alleged a violation of a right that is clearly established; (2) the court must consider whether, under the facts as alleged in plaintiff's complaint, a reasonable official in the defendant's position could have believed that his or her conduct was lawful. *See Collins v. Jordan*, 110 F.3d 1363, 1369 (9th Cir.1996).

The Ninth Circuit has indicated that a district court may establish qualified immunity as a matter of law on a motion to dismiss, for summary judgment, or for a directed verdict. *Thorsted*, 858 F.2d at 573. Qualified immunity provides immunity from suit and is not merely a defense to liability. *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991). For that reason, it is important "to resolve immunity questions at the earliest possible stage in litigation." *Id.*

### a. *Clearly Established Law*

The first step in deciding whether the defendants are entitled to qualified immunity is to determine whether the parties agree that the law governing due process was "clearly established." *See Collins*, 110 F.3d at 1369. Fontanilla does not complain that the CSC Rules themselves violated his constitutional rights. Rather, he equates the CSC Rules with due process. Fontanilla alleges that the defendants "arbitrarily and capriciously" engaged in a course of conduct which violated those rules, which ultimately resulted in the violation of his due process rights. Essentially, the parties disagree over whether the defendants' course of conduct violated those rules.

### b. *Reasonableness of Defendants' Belief*

Because the parties agree that the CSC Rules 15 and 22 constitute the rules that create a due process claim, Fontanilla must demonstrate that a reasonable officer would have known the actions of which Fontanilla complains violated his "clearly established" Constitutional rights. See id.

Fontanilla's arguments demonstrate that he misunderstands what the Rules themselves state. First, Fontanilla argues that defendants Kuwamoto, Smith and Vera should have known that, pursuant to the plain language of CSC Rule 22, due process required that Fontanilla could not both be placed on compulsory sick leave and be able to pursue a disability transfer. Second, Fontanilla argues that defendants knew or should have known that the CSC Rules also required that Fontanilla's compulsory sick leave could not be renewed for more than three months at a time, and for no longer than one year without medical re-evaluation. Further, Fontanilla argues that defendants knew or should have known that no good cause existed to recommend that the CCSF terminate Fontanilla. Finally, Fontanilla argues that defendants knew or should have known that, once the City's physician medically cleared Fontanilla to return to work in December 1996, due process required that the CCSF reinstate Fontanilla as soon as possible.[7]

---

**7.** Plaintiff also claims, but fails to substantiate, that defendants have refused to pay him his backpay and benefits for that six month period unless he waives all other claims against the CCSF for refusing to reinstate him during that period.

While Fontanilla's complaint appears to be that the defendants did not follow the CSC Rules, he fails to substantiate those allegations. He does not point to any CSC Rule prohibiting defendants' actions. To the contrary, the record reflects that the defendants afforded Fontanilla more process than was due him under the applicable Rules. For example, the CCSF extended the one-year limitation on sick leave to enable Fontanilla to either find another job or remedy his medical condition. Fontanilla does not point to any CSC Rule that prohibits the defendants from affording an employee such an opportunity. When Dr. Shusterman advised that there was no reasonable probability that plaintiff could return to work, Vera recommended Fontanilla's termination for "good cause" pursuant to the CSC Rules. Finally, Fontanilla fails to point to, and the court does not find, a CSC rule stating that the CCSF is required to immediately reinstate an employee formerly on sick leave.

Based upon the undisputed facts, a reasonable official in any of the defendants' positions could have, and likely would have, concluded that they were not violating Fontanilla's established due process rights when they took these actions. As a result, the qualified immunity doctrine protects the individual defendants from civil liability for performance of their discretionary functions.

### 2. *Summary Judgment: Due Process Claim*

In addition to the individual defendants having qualified immunity against Fontanilla's due process claims, the court grants the CCSF defendants' motion for summary judgment. A section 1983 claim based upon procedural due process must have three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3) lack of process. *Portman v. County of Santa Clara*, 995 F.2d 898, 905 (9th Cir. 1993).

#### a. *Liberty Interest*

■ Dismissal from government employment may implicate a liberty interest in reputation if the dismissal is for dishonesty, moral turpitude, or other reasons bearing such stigmata as might foreclose other employment opportunities. *Roley v. Pierce County Fire Protection Dist. No. 4*, 869 F.2d 491, 495 (9th Cir.1989) (citing *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). Mere dismissal, without such stigmata, is insufficient to implicate such an interest. *Clemente v. United States*, 766 F.2d 1358, 1365 (9th Cir.1985), *cert. denied*, 474 U.S. 1101, 106 S.Ct. 881, 88 L.Ed.2d 917 (1986). Dismissal from government employment for reasons of incompetence or inability to get along with others does not implicate a liberty interest even if the charges are unfair or untrue. *See, e.g., Portman*, 995 F.2d at 907–08; *Hayes v. Phoenix–Talent Sch. Dist. No. 4*, 893 F.2d 235, 237 (9th Cir.1990). Fontanilla's dismissal did not come with stigmata of the level necessary to implicate a liberty interest. The CCSF dismissed Fontanilla for his failing a medical evaluation, not for dishonesty or moral turpitude. As such, Fontanilla has no liberty interest which requires protection.

#### b. *Property Interest*

■ The protection of property interests "is a safeguard of the security of interests that a person has already acquired in specific benefits." *Board of Regents v. Roth*, 408 U.S. at 577, 92 S.Ct. at 2709. A government employee has a constitutionally protected property interest in continued employment when the employee has a legitimate claim of entitlement to the job. *Id.* Laws, rules, or understandings derived from independent sources such as state law create such claims of entitlement. *Portman*, 995 F.2d at 905. Thus, a statute or contract which creates a legitimate claim of entitlement will permit a due process claim. *Id.*

Defendants concede that the CSC Rules 15 and 22 comprise the statute which creates a due process claim. The CSC Rules authorize an appointing officer to seek a medical evaluation of any employee who poses a danger to himself or to another employee. If the employee is found to pose a risk of danger to others, the officer can place the employee on compulsory sick leave. CSC Rule 22.02D(1)–(3).

Defendants assert that Fontanilla has no legitimate expectation of employment if he is

deemed medically or physically unfit for his job and thus has no property interest. Fontanilla does not dispute defendants' assertion, but rather claims that defendants' various acts constitute a procedural violation. Fontanilla enumerates several "arbitrary and capricious actions" which he apparently believes constitute a procedural due process violation. The undisputed facts, however, indicate that all procedures were complied with as per the CSC Rules. As a result, summary judgment is appropriate because plaintiff has not demonstrated that any issue of material fact exists.

### 3. Motion to Dismiss: First Amendment Claim

Fontanilla complains that defendants Smith, Kuwamoto, Vera, and Wald violated his First Amendment rights by placing him on compulsory sick leave and ultimately terminating him in retaliation for a prior complaint about racial discrimination. Fontanilla further alleges that the defendants' refusal to immediately reinstate him after he was medically cleared to work constituted retaliation for the filing of this lawsuit, thereby violating his First Amendment right to free speech. The defendants argue that, because the plaintiff fails to state a claim for relief, the court should dismiss this cause of action.[8]

Where subjective intent is an element of the alleged constitutional tort, the Ninth Circuit has adopted a heightened pleading standard. *Branch v. Tunnell*, 937 F.2d 1382, 1386 (9th Cir.1991) (*"Branch I"*), After *Harlow*, "bare allegations of malice" are insufficient to subject government officials either to the costs of trial or the burdens of discovery. *Branch I*, 937 F.2d at 1385 (quoting *Harlow*, 457 U.S. at 817, 102 S.Ct. at 2737–37). The *Branch I* court held that district courts are required to dismiss insubstantial lawsuits at the earliest possible stage. *Id.* The *Branch I* court further held that, in cases where the clearly established law contains a subjective element such as motive or intent, "a plaintiff must put forward nonconclusory allegations of subjective motivation, supported either by direct or circumstantial evidence." *Id.* 937 F.2d at 1387. In conclusion, under the heightened pleading standard, a plaintiff alleging a violation of such law must include in his complaint nonconclusory allegations supported by evidence of unlawful intent. *Id.* at 1386.

Fontanilla's First Amendment claim does not meet the heightened pleading standard required under *Branch I*. Under clearly established law, deliberate retaliation by state actors against an individual's exercise of the First Amendment is actionable under section 1983. *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir.1989); *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir.1986), *cert. denied*, 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 979 (1987). To make out a prima facie claim of retaliation, the plaintiff has the burden of showing that retaliation for the exercise of protected conduct was the "substantial" or motivating factor behind the defendants' conduct. *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977).

Because subjective intent is an element of the clearly established First Amendment law, Fontanilla must put forward nonconclusory allegations of subjective motivation, supported either by direct or circumstantial evidence. In his complaint, Fontanilla merely makes conclusory allegations that the defendants' acts were done in response to his alleged complaint about prior discrimination and his filing of this lawsuit. As a result, Fontanilla's First Amendment claim does not survive defendants' motion to dismiss.

### 4. "Violation of Civil Rights" Under Section 1983

Fontanilla also alleges that the CCSF defendants "entered into an agreement to retaliate against the plaintiff for complaining of racial discrimination by his employer and union, in violation of Plaintiff's constitutional

---

**8.** Defendants argue that the court should dismiss plaintiff's third cause of action for failure to state a claim upon which relief can be granted. Defendants also argue that plaintiff's third cause of action ("violation of civil rights") is duplicative of his second cause of action (violation of the First Amendment) to the extent that the third cause of action raises a claim for a violation of the First Amendment. Thus, the court construes the defendants' motion to dismiss as applicable to the second cause of action as well.

right to free speech." Complaint, ¶ 102. It is unclear whether Fontanilla intends to state a claim for racial discrimination, retaliation in violation of his First Amendment rights for complaining of racial discrimination, or both. It is also possible that Fontanilla did not intend to state a claim for racial discrimination or retaliation in violation of the First Amendment but, rather, intended to assert a conspiracy on the part of the defendants for a "violation of civil rights." The court addresses each of the possible claims in turn.

### a. *Racial Discrimination*

In order to prove racial discrimination, the plaintiff must show that the CCSF defendants acted with the intent to discriminate. *See Sischo–Nownejad v. Merced Community College Dist.,* 934 F.2d 1104, 1113 (9th Cir. 1991). Fontanilla, however, makes a mere conclusory allegation that defendants retaliated against him for complaining of racial discrimination. Fontanilla fails to set forth any facts that would support a finding of intentional discrimination under the heightened pleading standard employed in evaluating a motion to dismiss where a defendant's subjective intent is at issue. *See Branch I,* 937 F.2d at 1383. As a result, a racial discrimination claim does not survive the defendant's motion to dismiss.

### b. *Retaliation*

If Fontanilla intends to state a retaliation claim in violation of his First Amendment rights against the CCSF defendants, that claim constitutes a claim for retaliation in violation of the First Amendment under section 1983. As discussed supra, that claim also fails because it does not meet the heightened pleading standard required under *Branch I.*

### c. *Conspiracy for a "Violation of Civil Rights"*

■ Finally, if Fontanilla does not intend to assert a claim of "racial discrimination" or "retaliation," but rather, intends to assert a claim of "a violation of civil rights," then Fontanilla's third cause of action presumably goes to a theory that the defendants "conspired" to retaliate against him and deprive him of his "constitutional right to free speech."

As the defendants point out, section 1983 does not create a diffuse "violation of civil rights" cause of action. Rather, in order to state a claim under section 1983, Fontanilla must show that the defendants acted under color of state law, and that their conduct deprived him of a specific constitutional right. *See, e.g., Duffy v. Riveland,* 98 F.3d 447, 456 (9th Cir.1996). The diffuse claim of a "violation of civil rights" that Fontanilla asserts is not one of the rights protected under section 1983.

Furthermore, although Fontanilla alleges that the "defendants and each of them entered into an agreement to retaliate against the Plaintiff" and that "[i]n furtherance of the conspiracy, said defendants encouraged, authorized, ratified, and/or condoned the acts of others," Fontanilla again fails to make the showing required to establish a conspiracy to retaliate under *Branch I.* Complaint, ¶¶ 102–03. Like Fontanilla's claim for retaliation in violation of his First Amendment rights, Fontanilla must again make some sort of nonconclusory allegations which contain evidence of unlawful intent. *Branch I,* 937 F.2d at 1386. Because Fontanilla does not make such allegations, a claim under section 1983 for conspiracy to violate his civil rights also fails.

### 5. *Statute of Limitations*

■ Defendants assert that the claims against Enisman, Wilson, and Newman are time-barred since the factual events occurred in December 1992 for Wilson and Enisman, and in November 1993 for Newman. Fontanilla filed his complaint in October 1996.

Fontanilla asserts that his claim is based on a conspiracy between the defendants to injure his person and property, and that the statute of limitations for conspiracies under section 1983 should apply. However, it is not clear that Fontanilla has sufficiently pled a claim for a conspiracy under section 1983. In order to properly assert that the statute of limitations for a conspiracy should apply in this case, Fontanilla must include in his complaint some nonconclusory allegations containing evidence of a conspiracy under section 1983. *See Branch I,* 937 F.2d at 1383.

Even if Fontanilla were to sufficiently state a section 1983 conspiracy claim, the statute of limitations has expired. For section 1983 actions, federal courts apply the statute of limitations for personal injury actions in the state in which the claim arises. *Wilson v. Garcia,* 471 U.S. 261, 269, 105 S.Ct. 1938, 1943, 85 L.Ed.2d 254 (1985). In California, the applicable statute provides for a limitations period of one year from the date the cause of action accrues. *See* Cal.Civ. Proc.Code § 340(3); *Elliott v. City of Union City,* 25 F.3d 800, 802 (9th Cir.1994). When a section 1983 action is based on a claim of conspiracy, the limitations period begins to run from the date of the last overt act. *See Gibson v. United States,* 781 F.2d at 1340. Because each of the acts relevant to Enisman, Wilson, and Newman occurred more than one year before Fontanilla filed his complaint, the claims against those defendants are time barred.

### 6. *Municipal Liability*

▉ Fontanilla's fourth cause of action is against the CCSF for municipal liability. Fontanilla makes a conclusory allegation that the CCSF's customs and policies resulted in the deprivation of his right to due process, as well as his right not to be retaliated against for exercising his First Amendment rights. The CCSF argues that Fontanilla fails to identify a specific right violated by the defendants, and therefore the court should dismiss that cause of action for failing to state a claim for relief.

A local governmental entity may be sued under section 1983 where the alleged constitutional deprivation was inflicted in the execution of an official policy or custom. *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). It is improper to dismiss a section 1983 complaint alleging municipal liability on the pleadings alone, even if the claim is based on nothing more than a bare allegation that the conduct at issue conformed to official policy and, in turn, violated a constitutional right. *See Karim–Panahi v. Los Angeles Police Department,* 839 F.2d 621, 624 (9th Cir.1988); *Shah v. County of Los Angeles,* 797 F.2d 743, 747 (9th Cir.1986).

As a preliminary matter, the disposal of the Fourteenth Amendment claim on summary judgment grounds reflects Fontanilla's inability to hold the CCSF liable for a due process violation based on the carrying out of the CSC Rules. Because municipal liability is based upon the alleged violation of a constitutional right, Fontanilla cannot state a claim for municipal liability against the CCSF for a due process deprivation.

Moreover, although Fontanilla's complaint alleges that the City "authorized, approved, or ratified the customs, policy, and/or practices of arbitrarily and capriciously depriving civil service employees of rights and benefits secured to them by the Civil Service Rules," he fails to point to any official policy stating that an the CCSF may deprive an employee of due process. Complaint at 106. He also fails to point to any official policy that permits the CCSF to retaliate against an employee for exercising a right to free speech. Not only does Fontanilla fail to point to such a Rule or Rules, but the court's examination of the CSC Rules does not produce any such finding. As a result, Fontanilla's municipality claim must be dismissed for failure to state a cause of action.

### 7. *Equal Protection Violation*

▉ Plaintiff alleges that the CCSF defendants violated his equal protection rights "by refusing to afford him due process before taking his property, a right afforded to all other civil servants." Complaint at ¶ 92. Fontanilla contends that by virtue of being a civil servant, he is a member of a class that possesses constitutionally protected property interests. Plaintiff's Opp. at 23. In applying the Equal Protection Clause, the Supreme Court has treated as "presumptively invidious" those classifications that disadvantage a suspect class, or that impinge upon the exercise of a fundamental right. *Plyler v. Doe,* 457 U.S. 202, 216–17, 102 S.Ct. 2382, 2394–95, 72 L.Ed.2d 786 (1982) (stating that undocumented aliens are not a suspect class).

No court, however, has ever held that "civil servants" constitute a suspect class. *See, e.g., Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971) (gender is a suspect class); *McLaughlin v. Florida,* 379 U.S. 184,

85 S.Ct. 283, 13 L.Ed.2d 222 (1964) (race based classifications are suspect); *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976) (age based classifications are a suspect class). Moreover, there is no burden on Fontanilla's exercise of any fundamental right. *See San Antonio Ind. Sch. Dist. v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Fontanilla does not possess a fundamental right to government employment. The asserted right of due process constitutes a separate claim, which has already been discussed above.

### B. *Claims Against Dr. Shusterman*

#### 1. *Conspiracy Claim*

██ Fontanilla's conspiracy claim against Dr. Shusterman has no merit. In order to proceed with a conspiracy claim, Fontanilla must show an agreement among defendants to violate his civil rights and the actual deprivation of his rights as a result of the conspiracy. *Woodrum v. Woodward County,* 866 F.2d 1121, 1126 (9th Cir.1989). In addition, allegations of conspiracy must be supported by material facts, not merely conclusory statements. *Id.*

Fontanilla cites a string of apparent misdeeds that he has referenced in his complaint. He fails, however, to point to any evidence that an agreement between Shusterman and the other defendants to violate his civil rights ever existed. Nor does Fontanilla submit evidentiary facts from which a reasonable jury could infer a conspiracy. Without such evidence, Fontanilla's claim must fail as a matter of law.

#### 2. *Section 1983 Claims*

##### a. *State Actor*

Shusterman argues that Fontanilla's section 1983 claims against him fail because Shusterman was not acting under color of state law when he concluded that plaintiff suffered from a psychiatric disorder and should be placed on disability status. Although it is undisputed that Shusterman was an employee of the Regents of the University of California and performing staff division

functions for the CCSF's Division of Occupational Health Services, Fontanilla cannot show that Shusterman was functioning as a state actor for purposes of this claim. *See, e.g., Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). Instead, Fontanilla assumes that because the Regents employed Shusterman, Shusterman was functioning as a state actor at all times and for all purposes.

There are four tests which a court may utilize in order to determine whether a person was acting under color of state law *Id.* at 939, 102 S.Ct. at 2754–55.[9] Shusterman does not qualify as a state actor under any of these tests.

#### 1. *Public Function Test*

██ Under the public function test, a defendant may be considered a state actor if he or she engages in a traditionally exclusive government function. *Rendell–Baker v. Kohn,* 457 U.S. 830, 842, 102 S.Ct. 2764, 2771–72, 73 L.Ed.2d 418 (1982). The issue in this case is whether Dr. Shusterman performed a traditionally exclusive government function when he diagnosed Fontanilla with a medical condition that interfered with his ability to do his job and recommended that he be classified as disabled.

Shusterman was not "functioning as the government" when he acted as a diagnostic physician and made a recommendation based upon that diagnosis. *See, e.g., George v. Pacific–CSC Work Furlough,* 91 F.3d 1227, 1230 (9th Cir.1996) (holding that one may be a state actor for some purposes and not for others). Fontanilla cannot, and does not, convincingly argue that the diagnostic tasks of doctors are the type of actions which are traditionally reserved to the state. Thus, Shusterman does not qualify as a state actor under this test.

#### 2. *Nexus*

██ Under the nexus test, a plaintiff must show that there is a sufficiently close relationship between the defendant and the state, such that the actions of the defendants

---

9. As the Ninth Circuit has confirmed, it is unclear whether the four approaches to determining whether one is a state actor are factors of a

single test or independent tests. *George v. Pacific–CSC Work Furlough,* 91 F.3d 1227, 1230 (9th Cir.1996).

may be justifiably attributed to the state. *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 453–54, 42 L.Ed.2d 477 (1974). Here, Shusterman was an employee of the Regents and, as part of that employment, performed staff physician duties for the CCSF's Division of Occupational Health Services.

Although Shusterman acted as an Occupational Health Services staff physician, Fontanilla has not shown that there was a nexus between Shusterman and the CCSF in terms of Shusterman's diagnosis and recommendation. The CCSF did not instruct staff physicians as to the manner in which the physicians should examine employees. The CCSF may have based some of its employment decisions on the doctors' diagnoses, but this does not automatically transform all doctors who may have examined the CCSF employees into state actors for purposes of section 1983 liability.

The Supreme Court has held that no nexus was established where a private school treating students with drug and alcohol problems received 90 percent of its funding from the state and operated pursuant to a state contract. *Rendell–Baker v. Kohn,* 457 U.S. 830, 841–42, 102 S.Ct. 2764, 2771–72, 73 L.Ed.2d 418 (1982). The Court also noted that contractors performing services for the government do not automatically become state actors for constitutional purposes. *Id.* at 843, 102 S.Ct. at 2772–73. By analogy, then, the nexus test also fails to establish Shusterman as a state actor.

### 3. *Joint Action*

■ A person may be considered a state actor if he or she is a "willful participant in joint action with the state or its agents." *Dennis v. Sparks,* 449 U.S. 24, 27, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980). Joint action may be found where the private party conspired with the state in order to deprive someone of his or her constitutional rights. *Fonda v. Gray,* 707 F.2d 435, 437 (9th Cir. 1983).

Again, Fontanilla has not properly alleged the existence of a conspiracy between Shusterman and state actors such as the CCSF. In addition, there are no other allegations supporting any joint action between Shusterman and the state in terms of Shusterman's

diagnostic decision. The mere fact that Shusterman at times acted as a staff physician at Occupational Health Services does not mean that he engaged in joint action with the CCSF to render an adverse medical diagnosis. Absent the proper allegations, Shusterman cannot be deemed a state actor under the joint action test.

### 4. *State Compulsion*

■ Under the state compulsion test, Fontanilla must demonstrate that the state encouraged or coerced the private actor to take a certain action, thus transforming the action into one of the state. *See, e .g., George,* 91 F.3d at 1232. Fontanilla does not even attempt to show that there are any facts supporting an inference that Shusterman was in any way coerced or compelled by the state to diagnose plaintiff with a medical condition. As a result, Shusterman does not qualify as a state actor under the fourth and final test, and his motion for summary judgment is granted.

### C. *Claims Against the Union Defendants*

■ Fontanilla's claims against the union defendants are two-fold. First, Fontanilla claims that the union breached its duty of fair representation to him. Second, Fontanilla claims that the union, and its agents Seth Shapiro and Linda Joseph entered into an agreement or conspiracy to unlawfully interfere with Fontanilla's ability to work in violation of 42 U.S.C. section 1983.

### 1. *Duty of Fair Representation*

Fontanilla claims that the union defendants breached their fair duty of representation because they failed to seek redress for his meritorious grievances under the CBA provisions, and/or processed his grievance in a perfunctory manner. The union defendants counter that Fontanilla's claims cannot withstand a summary judgment analysis.

A union has a duty of fair representation to its members. A union, however, has a wide range of discretion in how it discharges its duty. A union breaches its duty of fair representation only if its actions are either "arbitrary, discriminatory, or in bad faith." *Air Line Pilots v. O'Neill,* 499 U.S. 65, 67,

111 S.Ct. 1127, 1130, 113 L.Ed.2d 51 (1991). "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' ... as to be irrational." *Id.* (citations omitted).

Recognizing that "unions must retain wide discretion to act in what they perceive to be their members' best interests," the Ninth Circuit has stressed "the importance of preserving union discretion by narrowly construing the unfair representation doctrine." *Peterson v. Kennedy,* 771 F.2d 1244, 1253 (9th Cir.1985) (citations omitted). Representation need not be error free and "mere negligent conduct on the part of a union does not constitute a breach of the union's duty of fair representation." *Id.*

#### a. *SEIU*

Fontanilla's opposition absolutely fails to address the relevant case law. In fact, plaintiff assumes that he may survive summary judgment merely by continually asserting that material disputes exist. The union actions Fontanilla attacks, however, fall within the "wide range of reasonableness" that the applicable case law establishes.

##### 1. *Decision Not to Arbitrate*

The union chose not to take Fontanilla's case to arbitration. Prior to termination, Fontanilla received a medical decision declaring him unfit for duty. In addition, the union received legal advice that arbitration would most likely be unsuccessful. The Ninth Circuit has unequivocally stated that "a union's conduct may not be deemed arbitrary simply because of an error in evaluating the merits of a grievance, in interpreting particular provisions of a collective bargaining agreement, or in presenting the grievance at an arbitration hearing." *Peterson,* 771 F.2d at 1254; *see also Conkle v. Jeong,* 73 F.3d 909, 916 (9th Cir.1995) (holding, in case affirming district court's grant of summary judgment, that a union's decision regarding grievance is arbitrary only if "it lacks a rational basis"). Given the undisputed facts in this case, as well as Ninth Circuit precedent, it was not a breach of the union's duty of fair representation to decide not to arbitrate Fontanilla's grievance.

##### 2. *Failure to Sue to Compel Arbitration*

It is true that the union's attorney suggested a petition to compel arbitration as an option. However, given the union's reasoned decision not to pursue arbitration, petitioning to compel arbitration would have been a senseless maneuver.

##### 3. *Failure to Enforce Supplemental Agreement*

Fontanilla argues that CSC Rule 22, regarding procedures for compulsory sick leave, was incorporated into the CBA. However, as previously noted, whether CSC Rule 22 was properly part of the CBA was the subject of a drawn-out lawsuit. Given this undisputed fact, Fontanilla cannot show that the union's failure to enforce the supplemental agreement as to him was arbitrary, discriminatory, or in bad faith.

In *Peterson,* the Ninth Circuit concluded that a union's choice of litigation tactics, as well as its decision to concede certain issues, fell within the wide range of acceptable behavior by a union. 771 F.2d at 1255. The same applies here. The union reasonably chose to resolve the issue of the supplemental agreement in court. By the time it was conclusively resolved, it was too late for the court's decision to materially affect Fontanilla's individual case.

##### 4. *Plaintiff's Placement on Sick Leave*

Fontanilla also seems to argue that the union breached its duty of fair representation when it failed to prevent him from being placed on compulsory sick leave. The union counters that the issues arising in Fontanilla's case, such as his duty to submit to a doctor's examination and the possibility of his receiving a disability transfer, were issues arising under the civil service rules promulgated by the CCSF and not the CBA.

In California, a union's representation of its members relates only to wages, hours and working conditions. Cal. Gov't Code § 3504. Civil service rules promulgated by municipalities and local public agencies dealing with other issues remain intact. Cal. Gov't Code § 3500. As a result, the grievance procedures in the CBA deal solely with problems

arising under the CBA; there is no duty of fair representation over matters arising pursuant to the civil service rules. *See, e.g., Andrews v. Board of Supervisors,* 134 Cal. App.3d 274, 283, 184 Cal.Rptr. 542 (1982).

The union argues that Fontanilla was ordered to undergo a physical examination pursuant to the civil service rules, not the CBA. It further maintains that, although it filed a grievance on plaintiff's behalf, it had grave doubts whether the CBA was applicable to Fontanilla's predicament. The union argues the same is true for any disability transfer desired by plaintiff since such transfers are not covered by the CBA but by the civil service rules.

Fontanilla does not counter this argument. In any event, it is unnecessary for the court to reach a decision on the question of whether the union had a duty of fair representation over these issues. Even if the union did have such a duty, given Fontanilla's adverse medical results, the union's actions were not arbitrary, discriminatory, or in bad faith.

### 5. *Enforcement of Supplemental Agreement*

The union's 1994 supplemental agreement would have included the issue of compulsory sick leave in the CBA, had it been ratified and adopted. However, Fontanilla does not appear to contest the fact that approval and ratification did not occur until June 1997. Therefore, the union did not have any duty or right to require the CCSF to medically retest Fontanilla while he was on compulsory sick leave. For these reasons, Fontanilla claim of breach of the duty of fair representation against the union must fail.

### b. *Seth Shapiro*

■ There is no support for Fontanilla's allegation that Shapiro violated his duty of fair representation towards Fontanilla.[10] After inheriting Fontanilla's file in August 1993,

Shapiro filed a grievance on Fontanilla's behalf. Shapiro attended two grievance meetings with the CCSF and subsequently turned over the case to Joseph in November 1993.

To begin with, Fontanilla does not support any allegation that Shapiro, as an individual, had a duty of fair representation to him. If he had, the allegations against Shapiro, which involve his alleged failure to advise Fontanilla of his legal remedies through the CSC Rules, are at best negligence. As such, his actions do not rise to the level of a breach of the duty of fair representation. *See Peterson,* 771 F.2d at 1253.

### c. *Linda Joseph*

As with Shapiro, Fontanilla cannot state a claim against Joseph as an individual for breach of the duty of fair representation. Even if he could, however, there is no evidence that indicates that Joseph ever acted in a manner demonstrating arbitrariness, discrimination or bad faith. Her conclusion not to arbitrate, which Fontanilla argues shows de facto bad faith, was undisputedly based upon legal advice and her reasoned opinion of the merits of the case. Thus, it falls within the sphere of behavior found acceptable in *Peterson. Id.*

### 2. *Conspiracy Claim*

■ Fontanilla's conspiracy claim is without merit. Apart from Fontanilla's conclusory allegations, he does not point to any evidence tending to show that any of the union defendants, either individually or collectively, conspired with the other defendants to violate Fontanilla's civil rights.[11] In fact, as the union defendants point out, the evidence gathered thus far in the form of depositions indicates that the relationship of the CCSF and the union defendants was arms-length and adversarial. As a result, Fontanilla's conspiracy claim against the union also fails.

---

**10.** It is unclear from plaintiff's papers whether he is merely bringing the 1983/conspiracy claim against the individual defendants or whether he is also attempting to sue them for breach of the fair duty of representation. In the event that is attempting to sue them for such a breach, we address that issue.

**11.** It should also be noted that any section 1983 action, based on a conspiracy theory or otherwise, is most likely barred as against Shapiro by the one year statute of limitations. *Wilson v. Garcia,* 471 U.S. 261, 275, 105 S.Ct. 1938, 1946–47, 85 L.Ed.2d 254 (1985). Shapiro's involvement with Fontanilla's case ended in November 1993 and this action was not commenced until 1996.

**1222**

CONCLUSION

For the foregoing reasons, IT IS HERE-
BY ORDERED that the CCSF defendants'
motion for summary judgment is GRANTED
and the CCSF defendants' motion to dismiss
is GRANTED; defendant Dr. Shusterman's
motion for summary judgment is GRANT-
ED; and the union defendants' motion for
summary judgment is GRANTED.

*IT IS SO ORDERED.*